UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XIOMORA NICHOLS,<br><br>                              *Plaintiff*,<br>-against-<br><br>LAWRENCE H. WOODWARD FUNERAL HOME, and UPPER EAST SIDE REHABILITATION CENTER,<br><br>                              *Defendants*. | 1:22-CV-06264 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Xiomara Nichols is the niece of a deceased individual, Jean Bryan, who passed away at the Upper East Side Rehabilitation Center ("the Center") on September 4, 2021. Plaintiff alleges that Defendants Rehabilitation Center and Lawrence H. Woodward Funeral Home ("Woodward") mishandled Ms. Bryan's body. Plaintiff brings several claims stemming from Defendants' actions: (1) breach of the contract between Woodward and Plaintiff; (2) violation of New York Public Health Law § 4201; (3) violation of Plaintiff's right of sepulcher; (4) negligence and gross negligence; and (5) intentional infliction of emotional distress. ECF No. 1, Complaint. Pending before the Court is Defendant Woodward's motion to dismiss. ECF No. 18.

After reviewing the parties' submissions and all other relevant materials, Defendant Woodward's motion to dismiss as to the claims for breach of a written contract, breach of an oral contract, New York Public Health Law § 4201, loss of sepulcher, and intentional infliction of emotional distress is hereby **GRANTED**, ECF No. 18. Woodward's motion to dismiss the negligence and gross negligence claims is **DENIED**. Plaintiff's request for leave to amend her Complaint is **GRANTED**.

## BACKGROUND

**I.      Statement of Facts**

1

Ms. Bryan was admitted to the Center after experiencing an accident at home. Compl. at ¶ 5-8. Decedent designated Defendant Woodward as her funeral home. *Id.* at ¶ 47; ECF No. 21 at 6, 18. She died on Labor Day weekend, Saturday, September 4, 2021. *Id.* at ¶ 13. On that day, the Center informed Plaintiff of Ms. Bryan's passing. *Id.* The Center did not offer refrigeration for remains and kept Decedent in an unrefrigerated location in a storage closet. *Id.* at ¶¶ 21, 61. The Center needed a funeral home to transfer Decedent to the City Morgue. *Id.* at ¶ 21. Because no funeral home arranged Decedent's transfer to the City Morgue, on September 8, 2021, the Center contacted the City Morgue and arranged the transfer. *Id.* at ¶ 20; ECF No. 21-1, Nichols Aff. at ¶ 7.

Plaintiff initially believed Decedent had entered into a written preplanned contract with Defendant Woodward prior to admission to the Center, but now admits the written contract may not exist. *Id.* at ¶ 14. Plaintiff now takes the position that she had an implied oral contract with Defendant Woodward to care for the Decedent's body. ECF No. 21 at 6. Plaintiff had a long-standing relationship with Woodward. Plaintiff had contracted with Woodward for the funerals and burials of two other family members starting in 2019. Nichols Aff. at ¶¶ 2-3. She and her family did not have a written contract; rather, they had an oral agreement with Woodward. *Id.* They would notify Woodward of the family member's passing to coordinate the release and disposition of the deceased remains. *Id.* Plaintiff's release of the deceased's insurance policy information served as an implied contract with Woodward. *Id.* at ¶ 4[1]. Plaintiff and Woodward always followed the same process. *Id.* at ¶¶ 2-3.

Plaintiff attempted to contact Woodward multiple times to alert them of Ms. Bryan's death and to request her removal from the Center to the City Morgue, but her calls and emails

---

[1] Plaintiff did not append the insurance policy to her supporting papers.

went unanswered, and her calls were forwarded to a messaging service. *Id.* at ¶¶ 16-19. She attempted to contact them for multiple days to no avail. *Id.* The Center also attempted to contact Woodward, but was unable to. Nichols Aff. at ¶¶ 5-6. Because Woodward was not responsive, on September 8, 2021, the Center contacted the City Morgue and arranged to have Decedent's body transferred there. *Id.* at ¶ 20; Nichols Aff. at ¶ 7. At that point, the Center had kept Decedent's remains in an unrefrigerated storage location for two to three days following her death. Compl. at ¶¶ 20-21. Email correspondence shows Plaintiff was finally able to get in touch with Woodward on the September 8, 2021. ECF No. 19-4, Exhibit D-2 at 20. On September 9, 2021, Plaintiff sent a removal affidavit to Woodward authorizing them to take possession of Decedent's remains from the City Morgue. ECF No. 20 at 7. In an email dated September 11, 2021, Kendall Lindsay, the Woodward funeral director, informed Plaintiff that on or about September 4, 2021, Woodward's removal team had instructed the Center to send the body to the City Morgue. ECF No. 21-2, Exhibit B at 2 ("the September 11 email"). The September 11 email indicates 1) Woodward was aware of Decedent's death on September 4, 2021 and 2) it undertook an affirmative duty to transport her remains.

On September 11, 2021, Woodward notified Plaintiff that due to her aunt's remains being stored in an unrefrigerated location for two to three days following her death, Decedent's body was in an advanced stage of decomposition and unviewable, and the family would not be able to hold an open casket funeral service. *Id.* at ¶¶ 27-29. As a result of decomposition, Decedent was cremated. *Id.* at ¶ 27.

Plaintiff filed her Complaint on July 23, 2022. ECF No. 1. She alleges she had an implied oral contract with Defendant Woodward based on Woodward's affirmative undertaking of a duty of care over Decedent's remains and its course of dealing with Plaintiff and her family. In

particular, Plaintiff points to the September 11 email in which Defendant Woodward claimed it communicated with Defendant Center on September 4, 2021 about Decedent's passing, and instructed the Center to transport Decedent's remains to the City Morgue. ECF No. 21-2, Exhibit B at 2. Plaintiff also alleges the release of Decedent's insurance policy information served as an implied contract with Woodward. Nichols Aff. at ¶ 4. Due to Defendants' failure to exercise a duty of care to ensure Decedent's body was properly handled, maintained and transported, Decedent's body was decomposed and unviewable for an open casket funeral service. Plaintiff alleges she suffered severe emotional distress and trauma. The Center filed a cross-claim against the Funeral Home, claiming that if Plaintiff recovers in this action, it will be "by virtue of the recklessness, carelessness, and negligence of" the Funeral Home, and the Center "demands judgement for contribution and/or indemnification according to the respective degrees of negligence and/or culpability" to be determined at trial. ECF No. 14 at 12.

      Defendant Woodward moved to dismiss the Complaint. ECF No. 18. Woodward contends it had no pre-planned contract with Decedent or Plaintiff, it was closed on the weekend of Decedent's death for the Labor Day holiday, and it did not learn of Decedent's death until September 8, 2021. ECF No. 20 at 7; Thompson Aff. at ¶ 5. Woodward also submitted the affidavits of funeral director Ms. Lindsay and Lynda Thompson, the owner of Woodward, stating they did not locate a preplanned funeral contract with Decedent. ECF No. 19-3, Lynda Thompson Aff.; ECF No. 19-4, Kendall Lindsay Aff. Defendant and Cross-Claimant Center filed an opposition to Woodward's motion to dismiss, arguing it would be premature and prejudicial to dismiss Woodward from the action because there are material questions of fact as to Woodward's potential liability. ECF No. 22.

For the reasons stated herein, Defendant Woodward's motion to dismiss as to the claims for breach of a written contract, breach of an oral contract, New York Public Health Law § 4201, loss of sepulcher intentional infliction of emotional distress is hereby **GRANTED,** ECF No. 18. Woodward's motion to dismiss the negligence and gross negligence claims is **DENIED**. Plaintiff's request for leave to amend her Complaint is **GRANTED**.

## LEGAL STANDARD

### I.     12(b)(6) Motion to Dismiss

When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

### I.     Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege [1] the existence of an agreement, [2] adequate performance of the contract by the plaintiff, [3] breach of contract by the defendant, and [4] damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968). In New York, "a term is essential if it seriously affects the rights and obligations of the parties." *Morelli v. Alters*, No. 19-CV-10707 (GHW), 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020) (internal quotation marks omitted). Price is an essential material term. *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F.Supp.2d 308, 326 (S.D.N.Y. 2009).

Plaintiff initially believed Decedent had entered into a written contract with Defendant Woodward regarding her future funeral arrangements and burial prior to admission to the Center. Compl. at ¶¶ 14-15. Because Plaintiff no longer takes this position and Woodward has been unable to locate a preplanned contract, ECF No. 20 at 10, the claim for breach of a written contract is dismissed.

Plaintiff next argues that the release of Decedent's insurance policy information served as an implied contract for Woodward. Nichols Aff. at ¶ 4. Plaintiff does not elaborate further on this claim, nor does she attach the insurance policy to her supporting papers. Plaintiff's allegation is therefore conclusory as the Complaint contains no supporting facts. This claim must also be dismissed for failure to state a claim.

The Court now turns to Plaintiff's claim that she had an implied oral contract with Defendant Woodward to care for Decedent's body. ECF No. 21 at 6; Compl. at ¶ 14. Plaintiff

6

claims she has a history of entering into oral contracts with Woodward for funeral and burial services of her family members. Her contract over Decedent's remains was no different. Defendant Woodward claims no prior oral agreement existed between itself and Decedent or Plaintiff. But the September 11 email casts doubt on this claim. ECF No. 21-2, Exhibit B at 2. Ms. Lindsay informed Plaintiff that: "When your aunt passed on the 4th of September the nursing home was informed by our removal service when she passed that she was to be moved to the City Morgue for holding as they have cold storage capacity and there was no knowledge of prearrangements. Two different removal gentlemen informed them to do this till we spoke with you." *Id.* In the affidavits appended to its motion, Woodward denies it knew of Decedent's death prior to September 8, 2021, when Ms. Lindsay began corresponding with Plaintiff via email. Lindsay Aff. at ¶ 5. But it remains nebulous if Plaintiff and Woodward did indeed enter into an oral agreement. Plaintiff does not allege further facts in support of her oral argument claim – she does not allege the dates or details of her conversations with Woordward in which she allegedly entered into an oral argument. Plaintiff does not provide sufficient details about her past agreements with Woodward.

Even if the Court were to find an oral agreement existed, Plaintiff's breach of contract claim suffers from another flaw. This Court's recent decision in a nearly identical case is instructive. *Watkins v. Harlem Ctr. for Nursing & Rehab., LLC*, No. 20-CIV-2919 (KPF), 2021 WL 4443968 (S.D.N.Y. Sept. 28, 2021). In *Watkins*, the daughters of a deceased individual likewise brought an action against a funeral home and a rehabilitation center after defendants allegedly mishandled their mother's body, failed to store it in a refrigerated location, and as a result was in a state of advanced decomposition, and the family could not hold an open casket

funeral service. *Id.* at *1. The court dismissed the oral breach of contract claim against the funeral home after plaintiffs failed to establish they had discussed the price term with the funeral home. "Without allegations establishing the price term of the alleged Oral Agreement, Plaintiffs fail to put forward a plausible claim that either they or [the funeral home] intended to be bound by the Agreement." *Id.* at *7 (citing *Mark Bruce Int'l Inc. v. Blank Rome, LLP*, 876 N.Y.S.2d 19, 20 (1st Dep't 2009) (holding that the parties' "exchange of e-mails, which did not set forth the fee for plaintiff's services or an objective standard to determine it, was too indefinite to be enforceable").

In her Complaint, Plaintiff alleges she "paid for services not provided for by Woodward." Compl. at ¶ 80. It is unclear whether and when she discussed payment with Woodward. Ms. Lindsay alleges she first emailed Plaintiff estimated funeral expenses, after September 4, on September 8, 2021. Lindsay Aff. at ¶ 6. At this stage, Plaintiff's breach of oral contract claim is deficient for failure to discuss a material term, and cannot survive a motion to dismiss.

## II.   New York Public Health Law § 4201

Plaintiff next alleges a violation of New York Public Health Law § 4201 governing the disposition of remains. Under § 4201, a "person in control of disposition . . . shall faithfully carry out the directions of the decedent . . . . in a manner appropriate to the moral and individual beliefs and wishes of the decedent." Plaintiff alleges Decedent designated Woodward as her funeral home. But as there was no preplanned written agreement between Decedent and Woodward, Plaintiff has not provided evidence of this designation. Plaintiff's § 4201 is dismissed for failure to establish Woodward was in control of Decedent's disposition.

## III.  Loss of Sepulcher

Plaintiff's next claim is for the common law right of sepulcher against Defendant Woodward and the Center,[2] "which gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial or other disposition of the remains, and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body." *Mack v. Brown*, 919 N.Y.S.2d 166, 169 (2d Dep't 2011). The right of sepulcher is premised on "the legal right of the surviving next of kin to find 'solace and comfort' in the ritual of burial." *Melfi v. Mount Sinai Hosp.*, 877 N.Y.S.2d 300, 304 (1st Dep't 2009). Here, Plaintiff alleges Woodward interfered with her right to possess Decedent's remains when it failed to take charge of removing or transferring Decedent's remains from the Center to the City Morgue. Compl. at ¶¶ 47-51. Plaintiff alleges that Woodward mishandled Decedent's remains by not taking action to prevent her decomposition.

The Court again turns to *Watkins*, which found Plaintiffs failed to state a claim against the funeral home for loss of sepulcher for its failure to transport the decedent's body in a timely manner, resulting in advanced decomposition.[3] "Plaintiffs do not, however, identify any improper actions [the funeral home] took with respect to Decedent's body. Indeed, Plaintiffs do not allege that [the funeral home] mishandled Decedent's body once it was in [its] possession, and it is difficult to see how [it] could have mishandled or improperly dealt with Decedent's

---

[2] The Center has not moved to dismiss the loss of sepulcher claim.
[3] The *Watkins* court maintained a loss of sepulcher claim against the rehabilitation center for mishandling decedent's remains when it stored the body in an unrefrigerated location:

> Harlem Center responded to Decedent's passing by moving her body to an unrefrigerated storage closet and keeping it there for approximately five days. [] Due to the passage of time and lack of refrigeration, Decedent's body decomposed to such an extent that Plaintiffs were forced to cremate it immediately. [] These allegations are sufficient to state a claim for mishandling of remains.

2021 WL 4443968, at *15.

9

body before [the funeral home] possessed it." *Watkins*, 2021 WL 4443968, at *10-11. And, inaction is insufficient to establish liability. "Plaintiffs do not plausibly allege that [the funeral home's] inaction — specifically, its failure to arrange for the transportation of Decedent's remains from [the rehabilitation center] to [the funeral home] or the morgue [] — constitutes mishandling of Decedent's remains despite the fact that [it] did not possess Decedent's remains." *Id.* at *11. As is the case here, Plaintiff has not clearly established that Woodward possessed Decedent's remains, that it interfered with Plaintiff's right of possession of those remains, or that it mishandled the remains once they were in its possession. *Id*. (citing *Melfi*, 877 N.Y.S.2d at 309). As such, Plaintiff's loss of sepulcher claim against Decedent must be dismissed.

### IV. Negligence Claims

The Court now turns to Plaintiff's negligence and gross negligence claims. "The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks omitted). "In New York, the existence of a duty is a 'legal, policy-laden declaration reserved for judges.'" *Sparago v. Beaver Mountain Log Homes, Inc.*, No. 20-CIV-276 (KMK), 2021 WL 965448, at *5 (S.D.N.Y. Mar. 15, 2021) (internal brackets omitted) (quoting *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)). And, this district has found "anyone who voluntarily assumes a duty . . . [is liable for negligence] in the performance of that duty." *Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 256 (S.D.N.Y. 2009). "[A]s a general matter, one who undertakes to render services in the practice of a profession or trade is 'held to the level of skill and care used by others in the community who practice the same profession or trade." *Abrams v. Bute* 27 N.Y.S.3d 58, 63 (2d Dep't 2016).

Plaintiff alleges Woodward owed her a duty of care to handle Decedent's remains. "Defendants['] failure to follow any proper procedure or protocol in properly handling Decedent's remains, resulting in decedent's body being locked in an unrefrigerated storage closet for over two days [] was recklessly indifferent to the rights of Nichols to be able to carry out [Decedent's] wishes and completely disregarded any dignity to Decedent." Compl. at ¶ 61.

Woodward will be held to the standard of a licensed funeral home. In *Watkins*, the court found Plaintiffs adequately alleged that the funeral home had assumed a duty to Plaintiff, arising not from its oral or preplanned agreement, but from its communication with Plaintiff that it would direct the rehabilitation center to take decedent's body to the morgue. 2021 WL 4443968, at *12. The same is true here. The September 11 email from Woodward indicates 1) Woodward was aware of Decedent's death on September 4, 2021 and 2) in instructing the Center on that date to transport the remains to the City Morgue, it undertook an affirmative duty to transport her remains. ECF No. 21-2, Exhibit B at 2. Woodward admitted it did not know when Decedent's body had been transported to the City Morgue. *Id.* While it is not clear that Plaintiff was made aware of Woodward's actions prior to the September 11 email, by instructing the Center to transport Decedent's remains to the City Morgue, Woodward "took on a duty to act as a reasonably prudent funeral home toward Plaintiff[]." 2021 WL 4443968, at *12.

To plead a claim for gross negligence, a plaintiff must also allege that a defendant's conduct "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Colnaghi, U.S.A. v. Jewelers Protection Servs.*, 81 N.Y.2d 821, 823-824 (1993). Plaintiff's failure to transport Decedent's remains, or to ensure that this task was carried out, "evinces a reckless disregard for the rights of" Plaintiff.

Plaintiff has plausibly alleged her negligence and gross negligence claims.

### V. Intentional Infliction of Emotional Distress

Finally, Plaintiff brings a claim for intentional infliction of emotional distress stemming from Defendant Woodward's actions. "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710, 954 N.Y.S.2d 559, 562 (2012) (citations omitted). Defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (internal citations and quotation marks omitted). "Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action." *Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 172 (1st Dep't 2000). New York courts have found intentional infliction of emotion distress is duplicative of negligence claims, and Plaintiff "cannot seek to recover the same damages for the same conduct under the cause of action for negligent infliction of emotional distress." *Watkins*, 2021 WL 4443968, at *13-14; *see also Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423, 1424, 151 N.Y.S.3d 642, 643 (2021) (same).

In this case, Plaintiff's claim for intentional infliction of emotional distress is duplicative of her claim for negligence arising from the same facts and must be dismissed.

### VI. Leave to Amend Complaint

Plaintiff seeks leave to amend her Complaint. Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut.*

*Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178). "[L]eave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Because Plaintiff's conclusory statements are insufficient to support the majority of her claims, the Court will afford Plaintiff the opportunity to amend her Complaint to attempt to cure its deficiencies. The Court hereby **GRANTS** Plaintiff leave to file her First Amended Complaint. Plaintiff is **ORDERED** file her Amended Complaint on or before **October 13, 2023**.

## CONCLUSION

For the reasons set forth by the Court, Defendant Woodward's motion to dismiss as to the claims for breach of a written contract, breach of an oral contract, New York Public Health Law § 4201, loss of sepulcher intentional infliction of emotional distress is hereby **GRANTED**, ECF No. 18. Woodward's motion to dismiss the negligence and gross negligence claims is **DENIED**. Plaintiff's request for leave to amend her Complaint is **GRANTED**.

**SO ORDERED.**

**Dated: September 29, 2023**
  New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**